Lincoln D. Bandlow, Esq. (CA #170449)
Lincoln@BandlowLaw.com
**Law Offices of Lincoln Bandlow, PC**
1801 Century Park East, Suite 2400
Los Angeles, CA  90067
Phone: (310) 556-9680
Fax: (310) 861-5550

Attorney for Plaintiff JurisPro, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JURISPRO, INC.,<br><br>               Plaintiff,<br><br>vs.<br><br>REDR GROUP, LLC; PRO EXPERT WITNESS, a business entity, form unknown; KBOOK PUBLISHING, LLC; KEVIN RICHARD, an individual; and DOES 1-10<br><br>               Defendants | **CASE NUMBER: 2:26-cv-8386**<br><br>**COMPLAINT FOR:**<br>**(1) COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501); (2) FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)); (3) FALSE ADVERTISING (15 U.S.C. § 1125(a)(1)(B)); (4) BREACH OF CONTRACT; (5) CDAFA VIOLATION (CAL. PENAL CODE § 502); (6) CFAA VIOLATION (18 U.S.C. § 1030); (7) INTERFERENCE WITH CONTRACT; (8) INTERFERENCE WITH ECONOMIC ADVANTAGE; (9) TRESPASS TO CHATTELS; AND (10) UCL VIOLATION (CAL. B&P § 17200)**<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff JurisPro, Inc. ("JurisPro" or "Plaintiff") brings this action against Defendants arising from the Defendants' systematic and unauthorized scraping, copying, reproduction, publication, distribution, display, monetization, and commercial exploitation of JurisPro's proprietary expert witness directory and related copyrighted materials.

## Introduction

1. JurisPro maintains one of the leading and largest compilations of expert witnesses in the United States.

2. JurisPro spent decades developing, curating, organizing, compiling, editing, maintaining, marketing, and improving its proprietary online expert witness directory, which is available at www.JurisPro.com.

3. JurisPro's directory includes original textual content, editorial summaries, proprietary taxonomy, category hierarchies, subcategory structures, metadata, website organization, selection and arrangement of information, and expert witness profiles with designated areas of expertise.

4. Beginning in or about January 2026, at the direction of Defendant RedR Group, LLC, ("RedR Group"), Kevin Richard ("Richard") and Defendant Kbook Publishing, ("Kbook") (collectively "Defendants"), and each of them, engaged in a deliberate, systematic and unauthorized scheme to scrape, copy and republish JurisPro's copyrighted content by stealing that content from JurisPro's servers, databases, and computer systems and using it on ProExpertWitness.com. Defendants appropriated JurisPro's proprietary compilation of expert witnesses, expert profiles, category hierarchy, and protected organizational structure for the purpose of capitalizing on JurisPro's substantial creativity and investment, thereby diverting business opportunities, and rapidly building a replacement directory using content created, curated and copyrighted by JurisPro. Defendants' conduct was intentional, knowing, willful, and undertaken for commercial gain.

Complaint – Demand for Jury Trial

5.     JurisPro seeks redress for Defendants' illegal actions, and alleges on personal knowledge as to its own actions and on information and belief as to the action of others as follows:

### Parties

6.     Plaintiff is a California Corporation which was formed in 1999, and has a principal place of business located at 703 Pier Ave., Ste. B213, Hermosa Beach, CA 90254. JurisPro's primary business is the operation of its online expert witness directory found at www.JurisPro.com. Individuals who wish to be retained as expert witnesses pay to list their background, credentials and experience on JurisPro which then markets their information to legal professionals seeking to retain expert witnesses. The overwhelming number of experts who list with JurisPro reside in California.

7.     Defendant RedR Group, Kbook, a Florida company, and Defendant Richard, an individual residing in Florida, are all doing business in California and are the founders of Defendant ProExpertWitness.com ("PEW"). PEW is an online expert witness directory created to steal from and compete against JurisPro in California, and nationwide. PEW lists on its website more than twice the number of experts based in California than those based any other state, markets its experts in California, solicits California experts to pay to list on its site, and collects information from California residents.

8.     Plaintiff is ignorant of the names of defendants fictitiously named herein as Does 1-10, who otherwise participated in the actions alleged herein, either as individuals or through a series of corporations, partnerships, limited liability companies, or other entities. Does 1- 10 were at all relevant times hereto were doing business in California.

9.     Plaintiff alleges that at all relevant times each Defendant was acting as the duly authorized agent of each other Defendant and that each Defendant is liable for each wrong committed by each other Defendant, amongst other forms of

Complaint – Demand for Jury Trial

joint and several liability. Defendants have proximately caused Plaintiff's indivisible damages, as alleged below, making each Defendant liable, either by joint and several liability, joint liability, several liability, proportionate liability, or whole liability.

10.     Plaintiff is informed and believes, and based thereon alleges that Defendants RedR Group, Kbook, Richard, PEW, and Does 1-10, formulated and initiated a plan to avoid responsibility for the obligations of the enterprise by forming other business firms and entities to continue in the same operations using the consumer recognition, marketing, identification, and reputation. During all relevant periods alleged herein, Defendants RedR Group, Kbook, Richard, PEW, and Does 1-10 maintained a shared unity of control. As part of the manipulation of the activities of the business operations, RedR Group, Kbook, Richard, and PEW, and Does 1-10 entered into a pattern and practice of engaging in unlawful activities.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

12.     This court has personal jurisdiction over Defendants RedR Group, Kbook, Richard, PEW, and Does 1-10, as these Defendants committed intentional acts expressly aimed at California by targeting JurisPro, Inc., who Defendants knew was a California corporation, and causing harm that Defendants knew was likely to be suffered in California. The Defendants purposefully targeted their unlawful conduct at JurisPro in California by scraping, copying and republishing JurisPro's California data without permission. They directed their activities and consummated their transactions in California by publishing their expert witness directory in California with more than twice the number of California expert witnesses than any other state to market their services to California residents. The

4

Defendants contacted expert witnesses from California directly to pay to list in the California portion of their directory and interactively collected and stored personal data from users in this state, including the California experts themselves. The Defendants engaged in this intentional conduct as part of its exploitation of the California market for its own commercial gain to be in direct competition with JurisPro, a California company.

13.    Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this District. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) because Defendant or Defendant's agent resides or may be found in this District.

## Factual Allegations

### JurisPro, Inc.

14.    JurisPro was formed in 1999 by a group of practicing California attorneys and professional marketers as a resource to find and research expert witnesses.

15.    In 2001, JurisPro launched its online expert witness directory on www.JurisPro.com. Under this platform, individuals who wish to be retained as expert witness pay JurisPro an annual amount to list their backgrounds, qualifications and experience.

16.    JurisPro's online directory is provided to the legal community and others to search for an expert witness, and to evaluate the experience, background, and qualifications of those expert witnesses for consultation, retention, and/or designation.

17.    JurisPro independently conceived, developed, and maintains the proprietary hierarchy, selection, arrangement, and nomenclature of the expert witness categories and subcategories used throughout its online directory (the "Work"). Through substantial research, analysis, and industry experience, JurisPro

created and curated its classification system with a series of main categories and subcategories. This taxonomy constitutes original content and a valuable component of JurisPro's expert witness directory.

18.    JurisPro independently authored the names of its expert categories based on its own research and editorial judgment, including specialized classifications such as "Water/Sewage Treatment Engineering" and "Per- and Polyfluoroalkyl Substances (PFAS)" to name only a few.

19.    Experts who create profiles on JurisPro may designate their qualifications and specialties using JurisPro's proprietary taxonomy of expert witness practice areas. This classification structure, including its organization, categories, and nomenclature, was developed by JurisPro and is used to systematically categorize and present expert qualifications throughout the directory.

20.    For more than twenty-five years, JurisPro built, curated, and promoted its expert witness directory. As a result of these efforts, JurisPro has developed valuable goodwill, brand recognition, and business relationships within the legal profession, earning a reputation as a trusted and authoritative source for expert witnesses. JurisPro markets and distributes its directory to attorneys and law firms in California and nationwide, including through legal research platforms, professional organizations, and bar associations across the United States.

21.    JurisPro consistently appears among the leading expert witness resources in online search results and is regularly cited in respected legal publications, including the American Bar Association's *Litigators on Experts*, California Continuing Education of the Bar's *Expert Witness Guide*, *The Expert Witness Marketing Book*, and *Finding and Researching Expert Witnesses and Their Testimony*. JurisPro's prominence has been further reinforced through its participation in hundreds of bar association events, continuing legal education

6

programs, and professional seminars, resulting in recognition throughout the legal community as a trusted expert witness resource.

22. JurisPro derives a substantial portion of its revenue from experts who renew their listings annually to obtain the exposure, visibility, and client inquiries generated through JurisPro's expert witness directory. Experts are selective in choosing the platforms through which they market their services and generally seek to avoid unnecessary duplication or overexposure across competing directories.

23. Because of JurisPro's longevity and good reputation, it has been a target of other companies to solicit expert witnesses to list in their directory. As such, JurisPro has taken measures to prevent such unauthorized actions, including setting up expert profiles on JurisPro website for those who only list their services on JurisPro, and nowhere else.

### JurisPro's Terms and Conditions of Use

24. Pursuant to JurisPro's Terms and Conditions of Use, "Solicitation of any of the expert witnesses listed on JurisPro in any fashion for any other reason other than for consultation, retention, or designation is strictly prohibited. This prohibition includes, but is not limited to, contacting those expert witness listed on JurisPro by email, phone, text, fax, or any other electronic or personal communication to solicit those experts for other directories, referral services, or similar marketing or advertising services or products."

25. JurisPro's website includes Terms and Conditions of Use prohibiting unauthorized scraping, copying, distribution, harvesting, automated access, copying, republication, and commercial exploitation of the data.

26. By accessing the information provided on JurisPro's website, visitors and users signify their agreement to the Terms and Conditions of Use: "Any visitor, or user, who does not fully, completely and unconditionally accept and

7

agree to Terms and Conditions of Use, as outlined below, is not authorized to use or view any information contained in the JurisPro website."

27. Pursuant to JurisPro's Terms and Conditions of Use: "By using the JurisPro, and accessing the information provided on the website, you signify your agreement and form a contract to use JurisPro pursuant to these Terms and Conditions of Use. Any breach of this contract will entitle JurisPro to recover attorneys' fees to enforce these Terms and Conditions of Use."

**ProExpertWitness.com**

Plaintiff is informed and believes, and on this basis alleges as follows:

28. Defendant ProExpertWitness.com ("PEW") was established in 2025 as an online expert witness directory that directly competes with JurisPro for expert witness listings in California and throughout the United States. Both PEW and JurisPro compete for the same pool of experts, attorney users, search-engine rankings, website traffic, and annual expert witness listing revenue.

29. PEW was created in 2025 by Defendant RedR Group, Richard and Defendant Kbook. Richard is listed on the Kbook website as the Founder and CEO of Kbook Publishing. Richard is the only name that appears on the PEW website other than its list of expert witnesses. Both PEW and Kbook share the same contact phone number: (813) 537-0226. RedR Group and Kbook share the same address on their respective websites: 6754 Pines Blvd, Pembroke Pines, Florida 33024.

30. RedR Group is a digital marketing company and self-proclaimed "brand builder" who purportedly works "with the best minds in marketing, technology, content and design. RedR Group states that it has 15+ years of experience offering "progressive full-service digital marketing, design and content marketing services." RedR Group claims to "do everything," including strategy, branding, search engine optimization, and social media.

8

Complaint – Demand for Jury Trial

31.     Kbook's entire business model is centered around helping authors publish their copyrighted materials. As stated on their website: "KBook Publishing was founded in 2018 with a simple mission: to democratize publishing and give independent authors the tools and support they need to succeed. Our founder, Kevin Richard, spent over two decades in traditional publishing before recognizing the need for a different approach. She saw talented authors struggling to maintain creative control while accessing professional publishing services. Today, we've helped over 1,000+ authors publish their dreams while maintaining 100% of their royalties and creative control. Our team of publishing professionals brings decades of combined experience from traditional publishing houses, indie publishers, and successful self-publishing ventures."

32.     Despite their obvious knowledge of copyright laws as a publishing company, and knowing that copying JurisPro's content without authorization was unlawful, Defendants embarked on a deliberate scheme beginning no later than January 2026 to purposefully and knowingly scrape, copy, and republish JurisPro's proprietary content on the PEW website. The copied material included, among other things, JurisPro's entire original expert witness category hierarchy, expert profiles, and expertise information, directory structure, and other proprietary content. Defendants undertook this conduct without JurisPro's knowledge, consent, or authorization.

33.     Rather than invest the substantial time, effort, expense and creativity required to develop a competing directory in California and nationwide, Defendants chose to simply appropriate JurisPro's copyrighted content. Without permission, Defendants copied JurisPro's carefully curated directory of experts, its proprietary category taxonomy, and the organizational structure developed by JurisPro over decades of operation. In so doing, Defendants sought to shortcut the competitive process and exploit the value, goodwill and copyrighted content created by JurisPro.

34.    Defendants' copying was not isolated or incidental. It was systematic, intentional, and directory-wide. Defendants copied each of JurisPro list of expert categories onto their website.

35.    Defendants republication was so blatant that they even <u>bolded</u> JurisPro's main expert categories on PEW's directory. Defendants copied JurisPro's original category names including word-for-word classifications such as "Water/Sewage Treatment Engineering" and "Per- and Polyfluoroalkyl Substances (PFAS)."

36.    Defendants scraped and copied JurisPro's expert-search results, category pages, and expert profiles. This copying included the experts' category assignments and classifications created by JurisPro, as well as profile content, organizational structure, and other proprietary elements appearing throughout the JurisPro directory.

37.    Defendants then republished JurisPro's copyrighted material on ProExpertWitness.com in an effort to create the false appearance of an independently developed expert witness directory and to compete directly with JurisPro in California, and nationwide, using content taken from JurisPro.

38.    The Defendants' conduct breached JurisPro's Terms and Conditions of Use prohibiting scraping and republication of the data on JurisPro.

39.    After copying JurisPro's directory content without permission, Defendants used the misappropriated information to solicit JurisPro's clients by phone and electronic means to induce them to purchase listings on ProExpertWitness.com. Defendants' conduct violated JurisPro's Terms and Conditions of Use, which expressly prohibit the use of JurisPro's website and content to solicit JurisPro's experts for competing services. By exploiting information obtained from JurisPro to market competing listings, Defendants intentionally interfered with JurisPro's existing business and contractual

10

relationships with its expert witnesses and sought to divert revenue and goodwill from JurisPro to themselves.

40.     Defendants did not merely populate ProExpertWitness.com with content copied from JurisPro. They also published numerous false and misleading statements designed to enhance PEW's credibility, attract expert witnesses, and divert attorneys and other users from competing directories, including JurisPro.

41.     Among other things, Defendants represented on PEW's website that: (a) PEW maintains "3,500+ experts"; (b) PEW offers "1,900+ specializations of expertise"; (c) all PEW experts are "thoroughly vetted and verified for their credentials and experience"; (d) PEW was founded in 2018; (e) PEW has almost a decade of connecting attorneys with expert witnesses; and (f) PEW was created by a "team of legal professionals and technology experts."

42.     These representations are false and misleading. PEW contains fewer than 2,000 expert listings, not the 3,500-plus experts claimed by Defendants. Likewise, PEW offers fewer than 700 areas of specialization, far less than the 1,900-plus specializations advertised on the website.

43.     Defendants' claim that PEW's experts were "thoroughly vetted and verified" is also false. Rather than independently recruiting, screening, and verifying experts, Defendants populated PEW by scraping and republishing expert information from JurisPro and other sources without authorization. Defendants therefore lacked any reasonable basis to represent that the experts appearing on PEW had been vetted or verified by PEW.

44.     Defendants further misrepresented PEW's origins and qualifications. Although Kbook may have been formed in or around 2018, PEW itself did not exist until October 2024 (when the domain was first registered) at the earliest. Plaintiff is informed and believes that RedR Group did not maintain an expert directory until creating PEW. As such, PEW has not had "almost a decade" of connecting attorneys and expert witnesses as they claim on their website.

Complaint – Demand for Jury Trial

Defendants also falsely represented that PEW was created by a "team of legal professionals and technology experts." Upon information and belief, PEW was founded and operated by Defendant Richard, who does not possess the legal qualifications represented by Defendants.

## Cease and Desist to PEW

45.    On May 5, 2026, JurisPro sent a cease-and-desist email to the email address on the PEW website info@proexpertwitness.com requesting that the JurisPro information be removed from their website by May 15, 2026. That same day a reply was received by JurisPro from PEW stating that it was "reviewing the allegations internally."

46.    On May 6, 2026, JurisPro filed a DMCA report with Google about JurisPro content appearing on PEW's website. JurisPro notified PEW that same day of the filing of that report.

47.    On May 7, 2026 Shawn Miller, purportedly with PEW, wrote to JurisPro requesting that the Google DMCA report be withdrawn.

48.    On May 8, 2026, JurisPro's attorney wrote a cease-and-desist letter to Defendant Richard and Shawn Miller demanding that JurisPro's content be removed from PEW's website. That same day Google notified JurisPro that it had removed some of JurisPro's content from PEW's website.

49.    On May 12, 2026, Kevin Richard wrote an email to JurisPro's attorney falsely stating that PEW was not "intentionally using or reproducing any copyright content from JurisPro on our website" and that PEW "was committed to operating our platform responsibly and in good faith." There was no offer to remove JurisPro content from PEW's website.

50.    On May 13, 2026, JurisPro's attorney wrote another cease-and-desist letter to PEW requesting the removal of all JurisPro content to PEW. There was no response from PEW, and the JurisPro material was not removed from PEW's website by May 15, 2026.

## COUNT I

### Direct Copyright Infringement

51.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

52.    Plaintiff is the owner of the Work, which is an original work of authorship.

53.    Plaintiff owns the copyright to the Work and registered it with the U.S. Copyright Office on or about June 26, 2027 (Registration Number TXu002549277).

54.    Defendant copied and distributed the constituent elements of Plaintiff's Work.

55.    At no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of the Work, expressly or otherwise.

56.    As a result of the foregoing, Defendant violated Plaintiff's exclusive right to: (A) Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Distribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and (C) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

57.    Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

13

Complaint – Demand for Jury Trial

## COUNT II

### False Designation of Origin

### Lanham Act 43(a)(1)(B) - (15 U.S.C. § 1125(a)(1)(B))

58.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

59.     For more than twenty-five years, JurisPro has developed substantial goodwill, recognition, and commercial reputation as a trusted source for locating and researching expert witnesses. Through extensive investment of time, labor, editorial judgment, creativity, marketing, and financial resources, JurisPro created and maintains a proprietary expert witness directory, including its expert classifications, category hierarchy, subcategory structure, selection and arrangement of information, expert profiles, and related content.

60.     JurisPro's proprietary taxonomy, expert classifications, directory organization, and presentation of expert information are recognized within the legal community as originating from JurisPro and serve to identify JurisPro as the source of such content and services.

61.     Defendants, and each of them, used JurisPro's content, classifications, expert profiles, category hierarchy, and organizational structure in interstate commerce by reproducing, displaying, publishing, distributing, marketing, and promoting such content through ProExpertWitness.com.

62.     Defendants systematically copied and republished JurisPro's expert witness category hierarchy, including JurisPro's original category names, classifications, and organizational structure. Defendants further copied and republished expert profiles, expert classifications, category assignments, search results, and other content appearing on JurisPro's website.

63.     Defendants copied and republished JurisPro's original classifications, including, among others, "Water/Sewage Treatment Engineering" and "Per- and

Complaint – Demand for Jury Trial

Polyfluoroalkyl Substances (PFAS)," together with JurisPro's arrangement and presentation of such information.

64.    Defendants republished the copied content on ProExpertWitness.com without identifying JurisPro as the source of the content and without obtaining JurisPro's authorization.

65.    By presenting JurisPro's content, classifications, and directory structure as part of ProExpertWitness.com, Defendants falsely represented and falsely implied that such content originated with, was created by, was developed by, or was otherwise associated with Defendants.

66.    Defendants' conduct created and continues to create a likelihood of confusion, mistake, and deception among attorneys, expert witnesses, and other consumers regarding the origin, source, sponsorship, affiliation, approval, endorsement, and development of the content appearing on ProExpertWitness.com.

67.    Defendants' conduct was intended to create the false impression that ProExpertWitness.com was an independently developed expert witness directory possessing the depth, breadth, credibility, and expertise reflected in the copied JurisPro content.

68.    Defendants' conduct was further intended to capitalize upon the goodwill, reputation, and commercial value that JurisPro spent decades developing and maintaining within the legal community.

69.    As a direct and proximate result of Defendants' false designation of origin and unfair competition, Plaintiff has suffered and continues to suffer injury, including diversion of customers, diversion of expert witness listings, loss of business opportunities, loss of goodwill, loss of control over its proprietary content, diminution in the value of its intellectual property, and other damages according to proof.

## COUNT III

### False Advertising

### Lanham Act 43(a)(1)(B) - (15 U.S.C. § 1125(a)(1)(B))

70. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

71. In connection with the advertising, promotion, marketing, and sale of services through ProExpertWitness.com, Defendants made numerous false and misleading statements of fact regarding the nature, characteristics, qualities, experience, credibility, and scope of PEW and its expert witness directory.

72. Among other things, Defendants represented that: (a) PEW maintains "3,500+ experts"; (b) PEW offers "1,900+ specializations of expertise"; (c) PEW's experts are "thoroughly vetted and verified for their credentials and experience"; (d) PEW was founded in 2018; (e) PEW has "almost a decade" of experience connecting attorneys with expert witnesses; and (f) PEW was created by a "team of legal professionals and technology experts."

73. These representations were false, misleading, or lacked any reasonable basis at the time they were made. As alleged herein, PEW contains substantially fewer experts and areas of specialization than advertised, did not possess the claimed years of operational experience, and did not independently vet and verify the experts appearing on its website.

74. Defendants made the foregoing statements in commercial advertising and promotion through interstate commerce, including through ProExpertWitness.com and related online marketing activities directed to expert witnesses, attorneys, law firms, and other consumers throughout California and the United States.

75. The false and misleading representations were material because they related directly to factors that consumers consider when selecting an expert witness directory, including the size of the directory, the breadth of available

16

expertise, the credibility of the listed experts, the experience of the directory operator, and the reliability of the services offered.

76.    Defendants made the statements knowingly, intentionally, and for the purpose of inducing expert witnesses to purchase listings from PEW and encouraging attorneys and other consumers to use PEW rather than competing directories, including JurisPro.

77.    The representations were likely to deceive, and did deceive or had the tendency to deceive, a substantial segment of the intended audience by creating the false impression that PEW was a large, established, independently developed, experienced, and professionally vetted expert witness directory.

78.    Defendants' false advertising was a substantial factor in influencing purchasing decisions and consumer behavior, including decisions by expert witnesses regarding where to advertise their services and decisions by attorneys regarding where to search for and retain expert witnesses.

79.    Defendants' unlawful conduct has enabled them to attract experts, attorneys, and other consumers who otherwise would have utilized JurisPro's services, thereby causing injury to JurisPro that was a foreseeable and natural consequence of Defendants' false advertising.

80.    As a direct and proximate result of Defendants' false and misleading statements, JurisPro has suffered and continues to suffer competitive injury, including diversion of website traffic, diversion of prospective customers, diversion of expert witness listings, loss of listing revenue, loss of business opportunities, loss of goodwill, diminution in the value of its directory services, and other damages according to proof.

17

## COUNT IV

## BREACH OF CONTRACT

### (JurisPro Terms and Conditions of Use)

81. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

82. At all relevant times, JurisPro maintained Terms and Conditions of Use governing access to and use of the JurisPro website and its contents.

83. The Terms and Conditions of Use constitute a valid and enforceable contract between JurisPro and each person or entity accessing or using the JurisPro website.

84. Among other things, the Terms and Conditions of Use prohibit users from scraping, harvesting, copying, reproducing, republishing, extracting, downloading, commercially exploiting, or otherwise using JurisPro's content, data, expert profiles, classifications, directory information, and related materials without authorization.

85. The Terms and Conditions of Use further prohibit the use of JurisPro's website, content, and data for the purpose of competing with JurisPro, soliciting JurisPro's experts, or creating a competing expert witness directory.

86. Defendants accessed and used the JurisPro website on numerous occasions in connection with the conduct alleged herein.

87. By accessing and using the JurisPro website, Defendants assented to and became bound by the Terms and Conditions of Use.

88. JurisPro fully performed all obligations required of it under the Terms and Conditions of Use, except to the extent performance was excused.

89. As alleged herein, Defendants intentionally used the JurisPro website to obtain JurisPro's proprietary directory content, including expert witness profiles, expert classifications, category hierarchies, subcategory structures, metadata, search results, and related information.

18

90. Defendants then copied, reproduced, republished, distributed, displayed, and commercially exploited that information through ProExpertWitness.com without JurisPro's authorization.

91. Defendants further used information obtained from JurisPro to create, populate, market, and operate ProExpertWitness.com as a competing expert witness directory.

92. Defendants used information obtained from JurisPro to solicit expert witnesses appearing in the JurisPro directory and to encourage those experts to purchase listings and services from ProExpertWitness.com.

93. Defendants' conduct constituted material breaches of the Terms and Conditions of Use, including but not limited to the prohibitions against scraping, harvesting, copying, republication, commercial exploitation, competitive use, and solicitation.

94. Defendants' breaches enabled them to avoid the substantial time, expense, effort, and investment required to independently develop an expert witness directory and allowed them to improperly capitalize on JurisPro's proprietary content and goodwill.

95. Defendants' breaches are continuing in nature because Defendants continue to publish, display, market, and commercially exploit content obtained from JurisPro.

96. As a direct and proximate result of Defendants' breaches, JurisPro has suffered damages, including loss of revenue, loss of listing renewals, diversion of business opportunities, loss of goodwill, investigative costs, and other damages according to proof.

97. Pursuant to the attorney's fee provision contained in JurisPro's Terms and Conditions of Use, Plaintiff is also entitled to recover its reasonable attorney's fees and costs incurred in enforcing the agreement.

Complaint – Demand for Jury Trial

## COUNT V

## VIOLATION OF CALIFORNIA PENAL CODE § 502

### (California Comprehensive Computer Data Access and Fraud Act)

98.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

99.     JurisPro maintains computer systems, databases, and electronic records containing proprietary directory content, including expert witness profiles, category hierarchies, classifications, metadata, and related information developed through decades of investment and editorial effort.

100.   Defendants intentionally accessed JurisPro's website and computer systems and obtained JurisPro's proprietary data for the purpose of creating, populating, and operating a competing expert witness directory.

101.   As alleged herein, Defendants systematically copied JurisPro's category hierarchy, expert classifications, expert profiles, directory structure, and related content and republished that information on ProExpertWitness.com without authorization.

102.   Defendants' access to and use of JurisPro's computer systems and data exceeded the scope of any authorization granted by JurisPro and violated JurisPro's Terms and Conditions of Use, which expressly prohibit scraping, harvesting, copying, republication, commercial exploitation, and use of JurisPro content to compete with JurisPro.

103.   By obtaining and using JurisPro's computer data to build and operate a competing directory, Defendants knowingly accessed, used, copied, and made use of JurisPro's computer data and computer services without permission and in violation of California Penal Code § 502(c), including subdivisions (c)(1), (c)(2), (c)(3), and (c)(7), according to proof.

104.   Defendants' conduct enabled them to avoid the substantial time, expense, and effort required to independently develop a competing expert witness

20

directory and allowed them to commercially exploit JurisPro's proprietary information for their own benefit.

105. As a direct and proximate result of Defendants' conduct, JurisPro has suffered damages, including loss of revenue, diversion of business opportunities, investigative and remediation costs, loss of goodwill, and loss of control over its proprietary information.

106. Pursuant to California Penal Code § 502(e), Plaintiff is entitled to recover compensatory damages, attorneys' fees, injunctive relief, equitable relief, costs of suit, and such other relief as the Court deems proper.

## COUNT VI

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA)

## 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), and 1030(g)

107. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

108. JurisPro operates computer systems, servers, databases, and network infrastructure used in connection with its online expert witness directory located at JurisPro.com.

109. JurisPro's servers, databases, and computer systems constitute "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate and foreign commerce and communication.

110. JurisPro's protected computers contain proprietary information, including expert witness profiles, expert classifications, category hierarchies, subcategory structures, search results, metadata, directory content, and related information developed and maintained by JurisPro.

111. JurisPro's Terms and Conditions of Use expressly prohibit automated scraping, harvesting, extraction, copying, republication, commercial exploitation, and use of JurisPro content for the purpose of creating or operating a competing directory.

112.    Defendants intentionally used automated tools, scripts, bots, software, or other automated means to access JurisPro's protected computers and systematically extract substantial portions of JurisPro's proprietary data.

113.    Defendants repeatedly accessed JurisPro's protected computers for the purpose of obtaining expert profiles, category assignments, classifications, directory structures, metadata, and related information used to create, populate, and operate ProExpertWitness.com.

114.    Defendants' automated extraction activities exceeded the scope of any authorization granted by JurisPro and were undertaken in direct violation of JurisPro's Terms and Conditions of Use.

115.    Through those activities, Defendants knowingly obtained information from JurisPro's protected computers in violation of 18 U.S.C. § 1030(a)(2)(C).

116.    Defendants further accessed JurisPro's protected computers as part of a scheme to obtain and exploit JurisPro's proprietary information, thereby enabling Defendants to avoid the substantial time, expense, labor, and investment required to independently develop a competing expert witness directory.

117.    By obtaining JurisPro's proprietary information and using it to build, market, and operate ProExpertWitness.com, Defendants obtained things of value within the meaning of 18 U.S.C. § 1030(a)(4).

118.    Defendants' conduct was knowing, intentional, and undertaken for commercial advantage and private financial gain.

119.    Upon discovering Defendants' activities, JurisPro was required to investigate the unauthorized access, analyze server logs, identify the scope of the extraction, evaluate compromised data, implement protective measures, monitor ongoing activity, and undertake remediation efforts.

120.    As a direct result of Defendants' conduct, JurisPro incurred losses well in excess of $5,000 during a one-year period, including investigative costs, forensic analysis costs, mitigation expenses, monitoring expenses, employee time,

professional fees, and costs associated with responding to Defendants' unauthorized access.

121.  Defendants' conduct caused damage and loss within the meaning of 18 U.S.C. § 1030(e)(8) and § 1030(e)(11).

122.  Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action and recover compensatory damages, injunctive relief, equitable relief, and such other relief as the Court deems appropriate.

## COUNT VII

## **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

123.  The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

124.  JurisPro maintains valid and enforceable contracts with expert witnesses who purchase listings, advertising, and related services through the JurisPro directory.

125.  Pursuant to those agreements, JurisPro provides experts with directory placement, marketing exposure, attorney visibility, search functionality, and related promotional services in exchange for valuable consideration, including annual listing fees and other payments.

126.  The continued performance, renewal, and maintenance of these contracts constitute a substantial source of JurisPro's revenue, goodwill, and business value.

127.  Defendants knew of JurisPro's contractual relationships with its listed experts, or at a minimum were substantially certain such contractual relationships existed. Defendants intentionally targeted experts appearing in the JurisPro directory, accessed JurisPro's website for the purpose of obtaining expert information, and used information derived from JurisPro to create and operate a competing expert witness directory.

Complaint – Demand for Jury Trial

128.   Defendants intentionally copied and republished JurisPro's expert profiles, classifications, category assignments, and related information and used that information to market competing services to the same experts whose listings generated revenue for JurisPro.

129.   As alleged herein, Defendants used information obtained from JurisPro to solicit, recruit, market to, and encourage JurisPro's experts to purchase listings, advertising, and related services from ProExpertWitness.com.

130.   Defendants knew that such conduct would interfere with JurisPro's contractual relationships and would undermine JurisPro's ability to retain those experts as paying customers.

131.   Defendants intentionally engaged in the foregoing conduct for the purpose of diverting business, revenue, goodwill, and contractual relationships away from JurisPro and toward ProExpertWitness.com.

132.   Defendants' conduct disrupted and interfered with JurisPro's contractual relationships by diminishing the value of JurisPro listings, impairing renewals, encouraging experts to purchase competing services, and diverting business opportunities that otherwise would have remained with JurisPro.

133.   Defendants' conduct was independently wrongful because it was accomplished through, among other things, copyright infringement, false advertising, false designation of origin, breach of JurisPro's Terms and Conditions of Use, violations of California Penal Code section 502, violations of the Computer Fraud and Abuse Act, and other unlawful conduct alleged herein.

134.   Defendants' interference was a substantial factor in causing disruption to JurisPro's contractual relationships and was a direct and foreseeable cause of JurisPro's damages.

135.   Defendants acted intentionally, willfully, and with conscious disregard of JurisPro's rights, thereby entitling Plaintiff to recover punitive and exemplary damages to the extent permitted by law.

24

136.   Unless restrained by this Court, Defendants will continue to interfere with JurisPro's contractual relationships, causing continuing and irreparable harm for which there is no adequate remedy at law.

137.   As a direct and proximate result of Defendants' conduct, JurisPro has suffered damages including lost listing revenue, lost renewals, loss of contractual benefits, loss of goodwill, diversion of customers, and other damages according to proof.

### COUNT VIII

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

138.   The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

139.   JurisPro maintains ongoing economic relationships with expert witnesses, attorneys, law firms, insurance companies, businesses, and other consumers who use JurisPro's directory to locate, evaluate, and retain expert witnesses.

140.   JurisPro also maintains prospective economic relationships with experts who are expected to renew their listings and with prospective experts, attorneys, and other customers who are reasonably likely to enter into business relationships with JurisPro in the future.

141.   These existing and prospective relationships provide a substantial source of JurisPro's revenue, goodwill, business opportunities, and competitive advantage.

142.   Defendants knew, or reasonably should have known, of JurisPro's economic relationships and expectancies because Defendants intentionally accessed JurisPro's website, copied JurisPro's content, republished JurisPro's expert profiles and classifications, and targeted the same experts and customers served by JurisPro.

25

143. Defendants intentionally engaged in conduct designed to divert experts, attorneys, website traffic, business opportunities, and revenue away from JurisPro and toward ProExpertWitness.com.

144. As alleged herein, Defendants copied and republished JurisPro's expert profiles, category hierarchy, classifications, directory structure, and related content in order to create and promote a competing expert witness directory.

145. Defendants further represented that ProExpertWitness.com contained more than 3,500 experts, more than 1,900 specializations, thoroughly vetted experts, and nearly a decade of experience, despite knowing or having reason to know that such representations were false or misleading.

146. Defendants used the copied content and misleading representations to create the false appearance that ProExpertWitness.com was a comprehensive, independently developed, and credible expert witness directory capable of competing directly with JurisPro.

147. Upon information and belief, Defendants also used information obtained from JurisPro to market to, solicit, recruit, and obtain business from experts and prospective customers that otherwise would have maintained or entered into economic relationships with JurisPro.

148. Defendants engaged in the foregoing conduct with the intent to disrupt JurisPro's economic relationships and to divert business opportunities, revenue, goodwill, and market share from JurisPro to ProExpertWitness.com.

149. Defendants' conduct has disrupted and interfered with JurisPro's existing and prospective economic relationships by diminishing the value of JurisPro listings, diverting website traffic, impairing renewal opportunities, discouraging prospective customers from using JurisPro, and increasing competition through the use of unlawfully obtained content.

150. There was a reasonable probability that JurisPro would have realized future economic benefits from its relationships with experts, attorneys,

prospective customers, and prospective listing subscribers absent Defendants' wrongful conduct.

151.   As a direct and proximate result of Defendants' conduct, JurisPro has suffered damages, including lost revenue, lost listing renewals, lost business opportunities, diversion of customers, loss of goodwill, diminution in business value, and other damages according to proof.

**COUNT IX**

**<u>TRESPASS TO CHATTELS</u>**

152.   The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

153.   JurisPro owns, operates, and maintains computer systems, servers, databases, network infrastructure, and related electronic resources used in connection with the operation of its online expert witness directory.

154.   JurisPro has a lawful ownership and possessory interest in those computer systems, servers, databases, network resources, and related electronic infrastructure.

155.   Beginning no later than January 2026, Defendants intentionally accessed and used JurisPro's computer systems and network resources for the purpose of obtaining JurisPro's proprietary directory content, including expert witness profiles, category hierarchies, classifications, metadata, search results, and related information.

156.   Defendants used automated tools, bots, scripts, scraping software, proxy services, rotating IP addresses, or similar technologies to make substantial numbers of automated requests to JurisPro's servers and to systematically extract large quantities of data from the JurisPro website.

157.   Defendants' activities were undertaken without JurisPro's authorization, exceeded the scope of any authorization granted by JurisPro, and violated JurisPro's Terms and Conditions of Use.

27

158.   Defendants intentionally used JurisPro's computer systems, servers, bandwidth, processing power, memory, storage resources, and network infrastructure for their own commercial benefit in order to obtain information used to create, populate, market, and operate ProExpertWitness.com as a competing expert witness directory.

159.   Defendants' automated scraping activities generated substantial and repeated requests to JurisPro's servers over an extended period of time, consuming bandwidth, processing power, memory, storage resources, and other computing resources owned by JurisPro.

160.   Defendants' conduct interfered with JurisPro's use and operation of its computer systems by requiring JurisPro to devote employee time, technical resources, and third-party services to identify, investigate, monitor, analyze, and mitigate Defendants' unauthorized activities.

161.   JurisPro was required to review server logs, analyze traffic patterns, identify offending IP addresses, implement protective measures, modify security settings, monitor ongoing activity, and expend substantial resources responding to Defendants' conduct.

162.   Defendants' conduct diminished the value and usefulness of JurisPro's computer systems and deprived JurisPro of computing resources that otherwise would have been available for legitimate business operations and customer use.

163.   Defendants' interference with JurisPro's computer systems was substantial, intentional, and caused actual harm to JurisPro's possessory interest in its computer systems and network resources.  Defendants' conduct was a substantial factor in causing the damages suffered by JurisPro.

164.   As a direct and proximate result of Defendants' conduct, JurisPro incurred investigative expenses, employee costs, monitoring expenses, forensic analysis costs, remediation costs, and other damages according to proof.

28

## COUNT X

## <u>VIOLATION OF CALIFORNIA B&P CODE § 17200, ET SEQ.</u>

### (UNFAIR COMPETITION LAW)

165.   The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

166.   California Business and Professions Code §17200 prohibits any unlawful, unfair, or fraudulent business act or practice.

167.   At all relevant times, Defendants were engaged in trade and commerce within the State of California and throughout the United States.

168.   Defendants intentionally targeted California consumers, attorneys, and expert witnesses through the operation of ProExpertWitness.com.

169.   California contains more expert profiles on ProExpertWitness.com than any other state and more than twice the number of expert profiles appearing from any other state, reflecting Defendants' substantial and deliberate targeting of the California market.

### Unlawful Business Practices

170.   Defendants engaged in unlawful business practices by violating federal and state laws, including but not limited to:

a. False designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A);

c. False advertising in violation of 15 U.S.C. § 1125(a)(1)(B);

d. California Penal Code §502 violations;

e. Breach of JurisPro's Terms and Conditions of Use;

f. Intentional Interference with Contractual Relations; and

g. Intentional interference with prospective economic advantage.

171.   Each of the foregoing violations constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200.

**Unfair Business Practices**

172.   Defendants engaged in unfair business practices by systematically copying, harvesting, and republishing JurisPro's expert witness profiles, category hierarchy, classifications, directory structure, and related content for the purpose of creating and operating a competing expert witness directory.

173.   Defendants thereby avoided the substantial time, expense, labor, expertise, and investment required to independently develop a competing directory.

174.   Defendants obtained an unfair competitive advantage by exploiting JurisPro's proprietary content and goodwill while depriving JurisPro of the benefits of its investment.

175.   The harm caused by Defendants' conduct substantially outweighs any legitimate competitive justification for such conduct.

**Fraudulent Business Practices**

176.   Defendants engaged in fraudulent business practices by making false or misleading representations concerning ProExpertWitness.com and its services.

177.   Among other things, Defendants represented that ProExpertWitness.com contained more than 3,500 experts, more than 1,900 specializations, thoroughly vetted and verified experts, and nearly a decade of experience in connecting attorneys with experts.

178.   Defendants further created the false impression that the content appearing on ProExpertWitness.com was independently developed by Defendants rather than copied from JurisPro.

**Injury and Restitution**

179.   The foregoing representations and omissions were likely to deceive members of the public, including attorneys, expert witnesses, prospective customers, and other consumers.

180.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, JurisPro has suffered injury in fact and has lost money and property, including lost revenue, lost listing renewals, diversion of customers, loss of goodwill, loss of business opportunities, and diminution in the value of its proprietary content.

181.   Defendants have obtained money, business opportunities, goodwill, and other benefits through the conduct alleged herein and have been unjustly enriched at Plaintiff's expense.

182.   Unless restrained by this Court, Defendants will continue to engage in the unlawful, unfair, and fraudulent business practices alleged herein.

183.   Pursuant to California Business and Professions Code §§17203 and 17204, Plaintiff is entitled to restitution, injunctive relief, and such other equitable relief as the Court deems proper.

**Punitive Damages Allegations**

184.   The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

185.   Defendants' conduct was not accidental, inadvertent, negligent, or the result of mistake. Rather, Defendants knowingly, intentionally, and willfully engaged in a systematic scheme to appropriate JurisPro's proprietary content, business relationships, goodwill, and competitive advantages for Defendants' own commercial benefit.

186.   As alleged herein, Defendants deliberately accessed JurisPro's website, copied JurisPro's proprietary expert witness classifications, category hierarchy, directory structure, expert profiles, and related content, and republished that information on ProExpertWitness.com in order to create and operate a competing expert witness directory without incurring the substantial time, labor, expense, and investment required to independently develop such a directory.

31

Complaint – Demand for Jury Trial

187.    Defendants further used information obtained from JurisPro to compete directly against JurisPro, solicit JurisPro's experts, divert business opportunities, and interfere with JurisPro's existing and prospective economic relationships.

188.    Defendants' conduct was undertaken with knowledge of JurisPro's rights and in conscious disregard of those rights. Defendants were aware of JurisPro's Terms and Conditions of Use prohibiting scraping, copying, republication, competitive use, and solicitation, yet intentionally proceeded with the conduct alleged herein.

189.    Defendants' conduct continued after receiving notice of JurisPro's claims, including cease-and-desist demands, DMCA notices, and direct communications identifying the unauthorized use of JurisPro's content and demanding its removal.

190.    Despite receiving notice of their misconduct, Defendants failed and refused to remove all of the copied content from ProExpertWitness.com and instead continued to benefit from the publication and commercial exploitation of JurisPro's proprietary information.

191.    Defendants' conduct was willful, malicious, oppressive, and carried out with a conscious disregard for JurisPro's rights and the foreseeable harm that Defendants' conduct would cause to JurisPro's business, goodwill, contractual relationships, and economic interests.

192.    Defendants acted with the intent to injure JurisPro and to obtain an unfair competitive advantage by appropriating JurisPro's work product, goodwill, and business relationships rather than competing fairly in the marketplace.

193.    The conduct alleged herein constitutes malice, oppression, and fraud within the meaning of California Civil Code § 3294 and therefore warrants the imposition of exemplary and punitive damages in an amount sufficient to punish Defendants and deter similar misconduct in the future.

## **PRAYER FOR RELIEF**

194. WHEREFORE, Plaintiff JurisPro, Inc. respectfully requests judgment against Defendants Kbook Publishing, Kevin Richard, ProExpertWitness.com, and Does 1 through 10, jointly and severally, and requests that this Court enter judgment and award relief as follows:

A. For compensatory damages in an amount according to proof at trial;

B. For actual damages, consequential damages, and all other damages recoverable under applicable law;

C. For restitution and disgorgement of all revenues, profits, monies, benefits, and other consideration obtained by Defendants as a result of the conduct alleged herein;

D. For an accounting of Defendants' revenues, profits, business records, customer information, expert witness listings, and other financial information necessary to determine the full extent of Defendants' unlawful gains;

E. For preliminary, temporary, and permanent injunctive relief prohibiting Defendants, and all persons acting in concert with them, from:

1. Scraping, harvesting, copying, downloading, extracting, reproducing, republishing, displaying, distributing, transmitting, or otherwise using any content obtained from JurisPro;

2. Publishing, displaying, maintaining, marketing, or distributing any expert profile, expert classification, category assignment, category hierarchy, directory structure, or other content copied or derived from JurisPro;

3. Soliciting, contacting, recruiting, or marketing to expert witnesses using information obtained from JurisPro in violation of JurisPro's Terms and Conditions of Use;

4. Representing that copied JurisPro content originated with, was created by, or was developed by Defendants;

33

5. Continuing any conduct that violates the Copyright Act, the Lanham Act, California Penal Code section 502, JurisPro's Terms and Conditions of Use, or California's unfair competition laws;

F. For a mandatory injunction requiring Defendants to:

1. Remove and permanently delete all JurisPro content, data, expert profiles, classifications, category hierarchies, directory structures, and related information copied, derived, or obtained from JurisPro;

2. Remove all references, listings, classifications, and directory content derived from JurisPro from ProExpertWitness.com and any affiliated websites, databases, publications, marketing materials, or platforms under Defendants' control;

3. Deliver to Plaintiff or destroy all copies of JurisPro content, data, compilations, databases, records, and materials in Defendants' possession, custody, or control;

4. Provide a sworn accounting identifying all JurisPro content obtained, copied, stored, published, distributed, or used by Defendants;

G. For statutory damages, actual damages, disgorgement, and all remedies available under the Copyright Act, 17 U.S.C. §§ 101 et seq., according to proof;

H. For all damages, equitable relief, and remedies available under the Lanham Act, 15 U.S.C. § 1125 and 15 U.S.C. § 1117, according to proof;

I. For compensatory damages, equitable relief, injunctive relief, costs, and attorney's fees pursuant to California Penal Code § 502(e);

J. For attorney's fees and costs pursuant to JurisPro's Terms and Conditions of Use and any other contractual or statutory basis authorizing such recovery;

K. For attorney's fees pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117(a), California Penal Code § 502(e)(2), the parties' contract, and any other applicable provision of law;

34

L. For pre-judgment interest and post-judgment interest at the maximum rate permitted by law;

M. For costs of suit incurred herein;

N. For Counts 2-10, punitive and exemplary damages against Defendants in an amount sufficient to punish Defendants and deter similar misconduct pursuant to California Civil Code § 3294 and other applicable law;

O. For such other and further legal, equitable, declaratory, restitutionary, and injunctive relief as the Court deems just and proper.

DATED this 29 day of July, 2026.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
JurisPro, Inc.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 29th day of July, 2026.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
JurisPro, Inc.

Complaint – Demand for Jury Trial